IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| In re: MICHAEL D WHITE | ) | Case No. BK24-80136 |
| SONJA L WHITE | ) | Chapter 12 |
| Debtor(s) | ) | |

## SECOND AMENDED CHAPTER 12 PLAN

THE ABOVE NAMED DEBTOR(S) ("Debtor" whether one or multiple parties), propose(s) the following Plan under 11 U.S.C. §§1221 and 1222.

### SYNOPSIS:

1. Debtors obtained court permission to borrow for crop year 2024, however, they were unable to obtain an operating loan and have been custom farming and planting to generate income. The income projections provided herein are based on 2024's operations.  2.

2. Debtor disputes the amounts provided by the IRS in its claim and also disputes that certain returns were unfiled. Debtor is still working on their 2023 returns, however, and will file as soon as possible and object to the IRS' claim once it is ascertained that returns were filed and amounts paid contrary to the IRS' claim.

3. Bank of the Valley ("BOTV") has obtained relief from stay and it holds a first position lien on all of Debtor's personal property (subject to two pmsi's by Agco Finance). In an attempt to resolve the matter, the parties have entered into a forbearance agreement, which has been approved by this Court. See Exhibit B. Debtor has now complied with the first payment of said agreement and there has been a release of personal property of BOTV's lien on all personal property of Debtor. The only collateral that BOTV has currently is now Real Estate.

### I.
### PAYMENTS

Debtor(s), shall, during the period of this Plan as defined in Paragraph II, pay the Chapter 12 Trustee the sums set forth herein:

| **Date:** | **Payment:** |
|---|---|
| One Year from Confirmation | $66,634.00 |
| 12/31/2026 | $66,634.00 |
| 12/31/2027 | $66,634.00 |

### II.
### PLAN PERIOD

The period of this plan shall be three years, which shall be complete upon all payments being made as contemplated in Section I. Debtor(s) shall make all annual payments pursuant to this plan commencing one year from the date of confirmation and on each annual anniversary of said confirmation for a total of three years, which shall be made to the Chapter 12 Trustee, who shall

distribute said funds according to this Plan.

## III.
## EXHIBITS TO THIS PLAN

Attached hereto, pursuant to Local Rule 3015-1, are various attachments, schedules, and disclosures, including:

Exhibit A: Neb. R. Bankr. P. 3015-1(A)(10; 12). Initial Schedules of Assets and Liabilities and Amended Schedules of Assets and Liabilities, if any. Debtor's real estate value comes from the County Assessor's records and an additional amount for improvements not reflected by the Assessor's valuation. The basis of valuation of all other personal property comes from either a sum certain (such as grain/grain checks/etc.), or Debtor's familiarity with the market for equipment and other farm assets. No appraisals have been completed concerning Debtor's real or personal property. Debtor intends on retaining all secured property, which is necessary for Debtor's farm operation.

Exhibit B: Neb. R. Bankr. P. 3015-1(A)(1). Exhibit B details changes in Debtor's circumstances since the date of petition.

Exhibit C: Neb. R. Bankr. P. 3015-1(A)(11). Liquidation Analysis

Exhibit D: Neb. R. Bankr. P. 3015-1(A)(2-3). Cash Flow Projections for 2024. The cash flow data is based upon historical information concerning the income and expenses of Debtor.

Exhibit E: Neb. R. Bankr. P. 3015-1(A)(5). Profit & Loss from Farming Tax Statements for the prior four years.

Exhibit F: Neb. R. Bankr. P. 3015-1(A)(4). Projected Disposable Income Statement for term of Plan.

Exhibit G: Schedule G of Debtor's petition, listing all executory contracts and leases held on the date of petition.

Exhibit H: Neb. R. Bankr. P. 3015-1(A)(8). If the plan proposes the sale of assets, attached is a statement from a qualified tax accountant or attorney setting forth the probable tax consequences thereof.

Exhibit I: Neb. R. Bankr. P. 3015-1(A)(6). Projected Administrative Expenses for the term of plan, including attorney fees.

Exhibit J: Neb. R. Bankr. P. 3015-1(A)(7). Proposed Plan Summary.

## IV.
## DISPOSABLE INCOME

During the period of this Plan, Debtor shall remit disposable income, as defined by 11 U.S.C. §1225(b)(2), to the Chapter 12 Trustee annually. Debtor expects no disposable income for the plan term and the Debtors' cash flow projections show that Debtors will have no disposable income for

plan term. Debtors shall file quarterly operating reports with the Court within 30 days from the close of the prior quarter, commencing for the fourth quarter, 2024 and continuing throughout the duration of this Plan.

## V.
## CLAIM PRIORITY

Funds received by the Trustee pursuant to this Plan and not specifically to be disbursed to a secured creditor under this Plan, shall be used by the Trustee to pay the following claims in the priority indicated:

1. All claims entitled to a priority under 11 U.S.C. §507;
2. After payment of claims entitled to priority, sums received by the Trustee and not specifically to be distributed in payment of secured claims under this Plan, shall be paid, on a pro rata basis, to approved and allowed general unsecured claims, including, but not limited to, the remaining balances owed to any secured creditor after deduction of the value of the collateral received by said creditor, ir any, and the value of payments to be made to said creditor in satisfaction of the secured portion of the claim as set forth in this plan.

## VI.
## TRUSTEE COMPENSATION

The Trustee shall receive, as compensation for services rendered in connection with this proceeding, a fee of 10% of payments made through the Trustee, up to $6,000.00 per year.

## VII.
## POST-CONFIRMATION INCURRING OF DEBT

After confirmation of this Plan, Debtor may incur secured debt for the operation of the farm, including, but not limited to, operating loans; livestock loans; real estate loans and/or machinery loans and may grant lender with respect to such loans a security interest/lien/deed of trust or mortgage in the property of the bankruptcy estate, including, but not limited to, future crops, machinery owned or hereinafter acquired, real estate, or other personal property of the estate, without the necessity of the filing of a motion or application for authority to incur secured debt, or the obtaining of further approval from the United States Bankruptcy Court for the District of Nebraska. Debtor shall be allowed to borrow post-petition for operations, refinancing of any loan, and for replacement of vehicles and equipment without further application to the Court.

Moreover, after confirmation of this Plan, Debtor may participate in any/all Farm Service and USDA programs as it pertains to future crops, without application or approval from the United States Bankruptcy Court for the District of Nebraska.

## VIII.
## PAYMENT OF ADMINISTRATIVE EXPENSES AND ATTORNEY FEES

Debtor's attorney, John A. Lentz, received a retainer of $15,000.00 all of which has been earned and

accrued costs by Lentz's hourly billing records. Debtor's attorney expects a balance to be owed after application of the retainer of approximately $10,000.00 in total for all services and costs during this case. Debtor's attorney shall not be paid from said retainer or estate funds except upon application to the Court for approval of the same.

All other administrative expense claims shall be made by motion and shall be paid as approved by the Court and as excess funds become available. Secured Creditors shall be allowed post-petition fees and costs per 11 U.S.C. §506(b).

## IX.
## SECURED CREDITORS

**AS TO ALL SECURED CREDITORS**: ANY CONTINUING LIENS ON CROPS SHALL NOT ATTACH TO CROPS/COLLATERAL WHICH DID NOT EXIST ON DATE OF PETITION AND WHICH ARE NOT PROCEEDS OF COLLATERAL. SECURED CREDITORS SHALL RELEASE ANY LIENS ON FUTURE CROPS UPON CONFIRMATION OF PLAN, AND SHALL NOTIFY ANY APPLICABLE THIRD PARTIES OF SAID RELEASE.

1. <u>Pierce County Treasurer</u>. Debtor was current on all property taxes on the date of petition and is current post-petition. Debtor proposes to pay this creditor directly, and not through this Plan on all taxes due and owing prior to their becoming delinquent.

2. <u>Wells Fargo Bank, NA (Claim#9)-</u> Debtor is the owner of a homestead located in Pierce, Nebraska, which Debtor values at $600,000.00. This asset is subject to a deed of trust held by Wells Fargo Bank, NA. The balance on the Home Note on the date of petition was $210,013.78 with an arrears of $4,995.27. Debtor shall pay the Trustee this sum by December 31, 2024, who shall distribute to this creditor to cure arrears. Otherwise, Debtor shall make regularly monthly post-petition payments directly to Wells Fargo.

   This secured creditor shall retain all security interest in the real property, and any other assets pursuant to its blanket lien existing on the date of petition, which shall remain until all payments pursuant to this note, as modified by this plan, are paid in full. All payments shall be made by Debtor to this creditor directly and not through the Chapter 12 Trustee.

3. <u>Bank of the Valley(Claim #11)-</u> This Creditor held a blanket UCC lien on all of Debtor's personal property and currently a second place deed of trust on Debtor's land and a third position deed of trust on Debtors' residence. BOTV filed a claim for $2,076,462.34, and has relief from stay. Debtor submits the attached (Exhibit B), forbearance agreement, as approved by this Court and shall comply with all provisions thereof. Debtor has tendered payment to BOTV, and it released liens on personal property according to the Forbearance Agreement, and pursuant to said Agreement, Debtors will make a payment of $50,000.00 by December 31, 2024 to release BOTV's deeds of trust on real estate.

4. <u>Agco Finance, LLC (Claim #4)</u>  This Creditor holds a pmsi in a Challenger Tractor with a claim for $71,493.09.  This Creditor shall be paid at the rate of 10.0% per annum interest on its claim, and shall receive $28,311.65/yr through the Trustee in three annual payments for a total payment of $84,934.95.  Upon full payment, as described and modified herein, this Creditor shall release its claim to the Challenger Tractor and any lien thereupon.  The value of this equipment is more than this Creditor's claim.

   As adequate protection for the Equipment, Debtor will continue to maintain insurance on the equipment during the term of the plan, and Debtor shall maintain the equipment in good condition, subject to reasonable wear and tear.  Debtor shall be allowed to trade in equipment for new equipment consistent with the needs of his farming operation and Debtor shall be able to grant security interests to new vendors on replacement equipment so long as the remaining equipment and other farm product values provide an equity cushion for this creditor equal to 125% of the amount of the debt current owed to this creditor.

5. <u>Agco Finance, LLC (Claim #7)</u>  This Creditor holds a pmsi in a Massey Tractor.  The Creditor's claim attempts to describe the nature of the claim as a lease, however, it appears that the stream of lease payments are equal to the value of the equipment and there is a nominal buyout rate at term.  This Creditor's claim shall be treated as a security instrument rather than a lease.  The claim is for $81,620.83.  This claim shall be paid through the Trustee in three annual payments at 10.0% per annum interest; $32,322.29/year for a total of $96,966.87.  The value of this equipment is more than this Creditor's claim.

   As adequate protection for the Equipment, Debtor will continue to maintain insurance on the equipment during the term of the plan, and Debtor shall maintain the equipment in good condition, subject to reasonable wear and tear.  Debtor shall be allowed to trade in equipment for new equipment consistent with the needs of his farming operation and Debtor shall be able to grant security interests to new vendors on replacement equipment so long as the remaining equipment and other farm product values provide an equity cushion for this creditor equal to 125% of the amount of the debt current owed to this creditor.

6. <u>Ally Bank (Claim #14)</u>  This Creditor holds a pmsi in a 2018 Buick Enclave.  This Creditor shall be paid according to the payment terms of the original loan agreement directly and Debtors shall maintain insurance on the vehicle.

7. <u>State Nebraska Bank & Trust(Claim #18)</u>This Creditor holds a first position deed of trust on Debtors' land and a second position deed of trust on Debtors' residence.  The amount of this Creditors secured portion of claim is $1,889,986.21.  This Creditor filed a claim for $3,135,758.06 claiming that the entire claim is secured, which Debtors dispute.  This Creditor shall be paid on the secured amount of claim, $1,889,986.21 at 10..0% interest per annum, amortized over 20 years, annual payments to be $223,031.03 commencing November 1, 2025.  Debtors may pay off the balance owed, plus any then-accrued interest at any time to this Creditor, according to the Amortization Schedule found, as attached to Exhibit D.  If

Debtors require the full 20 payments to repay this Creditor, the total amount paid, including interest and principal shall be $4,460,620.60. Debtor shall keep adequate insurance on all property subject to this Creditor's deeds of Trust, and this Creditor shall be loss payee on any policy.

## X.
## DOMESTIC SUPPORT OBLIGATION & OTHER PRIORITY CREDITORS

Debtor Michael White has a domestic support obligation to Jan M. White, and was current on date of filing and has remained current in his obligations post-petition.

Debtors owe the Internal Revenue Service an unknown amount at this time and Debtors will be objecting to the claim of the IRS once they have acquired documentation of payments and returns not acknowledged in the IRS' claim. Once the proper amount of debt is derived, Debtor shall pay said amount by the end of the term of this plan, any priority amounts then due. The IRS claim is wholly unsecured based on prior liens.

## XI.
## UNSECURED CREDITORS

The allowed claims of any unsecured creditors shall be paid pursuant to the priority indicated in Part V of this Plan with any disposable income of Debtor beyond that necessary for the plan payments and payments to secured and priority creditors detailed herein. Debtor will be objecting to the claims of the IRS and Cooperative Finance Corp. As they are both wholly unsecured.

## XII.
## EXECUTORY CONTRACTS AND LEASES

Debtor hereby assumes all executory contracts and leases listed on Debtor's Schedule G, attached hereto as Exhibit G EXCEPT for the lease with MEBA.

In addition, post-petition, Debtor entered into a lease of equipment with Midwest Leasing, LLC/Aaron Ross, who purchased the equipment pursuant to the Motion and Order of Sale and the payments contemplated in the forebearance agreement found within Exhibit B herein. Such lease is made a part of Exhibit G and incorporated herein. Confirmation of this plan is approval of this lease.

## XIII.
## GENERAL PROVISIONS

1. Any payment due under the provisions of this Plan to any creditor shall be deemed timely made if the payment is delivered to the Chapter 12 Trustee prior to the payment date set forth in the Plan. Payments made to the Trustee shall be deemed made upon receipt by the Trustee.

2. Except as provided in 11 U.S.C. §1228(a), and except as provided in this Plan, or the order confirming this Plan, all of the property of the estate is vested in Debtor free and clear of any claims or interests of any creditor provided for by this Plan pursuant to 11 U.S.C. §1227(b).

3. Except as provided in 11 U.S.C. §1228(a), the provisions of this Plan shall, upon confirmation, bind Debtor and each creditor whether or not the claim of such creditor is provided for by this Plan and whether or not such creditor has accepted or rejected this Plan.

4. Upon the payment by Debtor of the sums required under this Plan, the real and personal property provided for in this Plan shall be owned by Debtor free and clear of any liens or encumbrances whatsoever held by any creditor of this estate, except to the extent that said lien or encumbrance is allowed by this Plan.

5. Debtor represents that it is within its ability to carry out this Plan and that it is submitted in good faith.

DATED this 17th day of November, 2024.

                              Michael D. White & Sonja L. White, Debtor

By:   /s/ John A. Lentz
      John A. Lentz, #24420
      Lentz Law, PC, LLO
      650 J St., STE 215B
      Lincoln, NE 68508
      402-421-9676
      john@johnlentz.com
      Attorney for Debtor

**NOTICE OF RESISTANCE DATE**

YOU AND EACH OF YOU ARE HEREBY NOTIFIED, pursuant to Neb. R. Bankr. P. 9013, that on November 17, 2024, the Debtor filed this Chapter 12 Plan in the above-entitled case in the office of the Clerk of the United States Bankruptcy Court for the District of Nebraska. Any resistance, request for hearing, or objection to plan must be filed and served no later than **December 8, 2024.** Pursuant to Local Rule 9013, any resistance or objection to said Plan shall set forth the specific factual and legal basis for the objection/resistance and conclude with a particular request for relief. If the resistance period expires without the filing of any resistance or request for hearing, the Court will enter an order confirming the Plan without futher hearing. If a resistance or request for hearing is properly and timely filed, the Clerk will schedule a hearing.

**CERTIFICATE OF SERVICE**

On November 17, 2024, the undersigned hereby certifies that a copy of the foregoing, including all Exhibits, and Notice of Resistance Date, was served upon all creditors listed on the court matrix on file with the Court, parties-in-interest, and those requested notice, by first class United States mail, postage prepaid, otherwise listed in the attached mailing matrix.

Further, the undersigned relies on the CM/ECF system to provide notice to the office of the United States Trustee and James A. Overcash, Chapter 12 Trustee.

/s/ John A. Lentz
John A. Lentz, #24420
Lentz Law, PC, LLO
650 J St., STE 215B
Lincoln, NE 68508
402-421-9676
john@johnlentz.com
Attorney for Debtor